BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: Prevagen Products Marketing and Sales Practices Litigation**<br><br>**Federal Trade Commission and the People of the State of New York v. Quincy Bioscience Holding Co. et al.**<br>**No. 1:17-cv-00124-LLS**<br>**(S.D.N.Y. Filed Jan. 9, 2017)** | MDL No. 2783 |

PLAINTIFFS FEDERAL TRADE COMMSSION
AND THE PEOPLE OF THE STATE OF NEW YORK
JOINT RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Federal Trade Commission ("FTC") and the People of the State of New York by the Attorney General of New York ("NYAG") respectfully submit this opposition to the Motion for Transfer of Actions to the Southern District of New York Pursuant to 28 U.S.C. § 1407 For Coordinated or Consolidated Pretrial Proceedings ("Motion for Transfer"), filed by Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., d/b/a/ Sugar River Supplements, Quincy Bioscience Manufacturing, LLC, Mark Underwood, and Michael Beaman ("Petitioners" or "Defendants"), to the extent that it seeks consolidation of the governmental enforcement action with three private actions.  Formal pretrial coordination of the governmental enforcement action with the other actions under Section 1407 is neither necessary nor warranted to avoid duplicative discovery or prevent inconsistent court rulings.  Centralization under Section 1407 is a "last solution," and the Panel has consistently

favored informal cooperation when feasible.  The burden to justify centralization is particularly high when there are a small number of actions.  Petitioners have not met that burden.

Here the fundamentally different nature of the government action from the three private actions weighs strongly against centralization.  The FTC/NYAG case is a law enforcement action brought to advance the public interest at large and as such fundamentally differs from the three putative class actions.  The private actions are brought under numerous and divergent federal and state statutes that vary in purpose, scope, burdens of proof, and remedies from the government action.  In addition, consistency in class certification rulings – one of the primary reasons to centralize – is not an issue in the government action and will likely delay resolution of the government's claims.  Finally, the actions are at significantly different procedural stages, reducing the likelihood that there will be significant overlap in discovery.

To the extent that there are issues that warrant coordination, for example to accommodate any areas of common discovery, informal cooperation is both feasible and preferable.  However, while Plaintiffs are amenable to discussing reasonable efforts to coordinate common aspects of discovery, Petitioners made *no* effort to explore this possibility with the FTC or the NYAG prior to filing their motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The FTC/NYAG Action

The FTC and the NYAG filed their law enforcement action in the Southern District of New York in January 2017.  The complaint alleges that Defendants made false and unsubstantiated claims that Prevagen, a dietary supplement, improves memory and that clinical studies proved the memory benefits.  The case is brought under federal and state consumer protection laws governing deceptive advertising.  As a government law enforcement action, the

case has no individual or class of private plaintiffs.  The action is national in scope, including New York consumers, and seeks both permanent injunctive relief to stop the deceptive ad campaign and equitable relief, such as money for consumer redress.  The case is brought in equity, and the proceeding will be a bench trial, not a jury trial.  Although formal pretrial discovery has not yet commenced, both the FTC and the NYAG have conducted thorough investigations prior to filing their Complaint, including reviewing some information and documents submitted by Defendants.

### B.  Racies/California Action

The Racies putative class action was filed in January 2015 – nearly two years before the action by the FTC and the NYAG.  The Racies complaint names only one corporate defendant, Quincy Bioscience, LLC, and no individuals, whereas the government action also names corporate defendants Quincy Bioscience Holding Company, Inc. and Quincy Bioscience Manufacturing, LLC, as well as individual defendants Mark Underwood and Michael Beaman.  In addition, the Racies action alleges violations of only California state law.  The Racies action challenges advertising claims about the efficacy of Prevagen, but as discussed below, the legal basis for the case and the relief sought differ from the FTC/NYAG case and thus present a number of different legal and factual issues.  The Racies trial court ruled – almost two years ago – to dismiss all causes of action that were premised on lack of substantiation for the memory benefits and has limited the case to falsity allegations focusing on the mechanism of action.  *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292, 2015 WL 2398268 (N.D. Cal. May 19, 2015).  The court also ruled that plaintiffs did not have standing under California law to seek injunctive relief and limited potential remedies to monetary relief.  *Id.*

### C. Vanderwerff/New Jersey and Karathanos/New York

The Vanderwerff and Karathanos actions are two putative class actions filed in February 2017 in the District of New Jersey and the Eastern District of New York respectively. Each involves a national class, or alternatively a New Jersey or New York state-only class. The cases challenge Prevagen's advertising under New Jersey and New York consumer protection laws available to the private parties and also include RICO charges. The New York state law cited in both the Karathanos action and the FTC/NYAG action requires an additional element of proof in the private action not necessary in the government's action – namely injury in fact. Thus, plaintiffs in the Karathanos action must prove injury in order to obtain the requested relief. Petitioners have filed a Motion to Dismiss the Complaint in Vanderwerff, including all substantiation counts and all injunctive remedies. *Vanderwerff v. Quincy Bioscience Holding Co., Inc. et al.*, No. 2:17-cv-00748, Dkt. 22 (Apr. 10, 2017). The motion has yet to be fully briefed. The Karathanos matter has not advanced beyond the filing of the Complaint. Discovery has not commenced in either action.

### ARGUMENT

#### A. Legal Standard

The presence of some common questions of fact, by itself, is not enough to justify transfer. *See In re Drowning Incident at Quality Inn Ne., Washington, D.C. on May 3, 1974*, 405 F. Supp. 1304, 1306 (J.P.M.L. 1976) (common facts is but one condition precedent to transfer under §1407). To transfer multiple cases to a single district for pretrial proceedings, this Panel must find that: (1) there are multiple cases sharing one or more common questions of fact; (2) transfer will be for the convenience of the parties; and (3) transfer will promote the just and efficient conduct of the actions. 28 U.S.C. § 1407. Centralization under Section 1407 "should

be the last solution after considered review of all other options." *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp 2d 1378, 1379 (J.P.M.L. 2012) (citations omitted). Moreover, Petitioners bear a heavier burden to justify centralization where there are only a small number of actions. *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010).

### B. Different Questions of Law and Fact Mean that Convenience and Judicial Economy Will Not Be Served by Centralization

Petitioners' motion relies heavily on the argument that, because these actions all arise out of the same allegedly deceptive advertising campaign for Prevagen, they are sufficiently similar to warrant centralization. Despite arising from a common ad campaign, there are fundamental differences between the government and private actions and several issues with little or no overlap among the cases.

Petitioners ignore important distinctions between the FTC/NYAG government enforcement action and the private class action lawsuits. Each of the three putative class actions will involve discovery and pretrial briefing related to class certification – a time-consuming and resource-intensive process that is irrelevant to the FTC/NYAG action, would unnecessarily delay the governments' case, and would impede the public interest designed to be served by governmental enforcement. Petitioners' motion asserts that the potential for conflicting or overlapping class actions "presents one of the **strongest** reasons" for centralization of pretrial proceedings. *In re Plumbing Fixtures*, 308 F. Supp. 242, 243-44 (J.P.M.L. 1970) (emphasis added by Defendants' counsel). Where all matters are class actions, centralization makes sense to ensure consistency in class certification rulings, but certainly not here where class certification in the three private actions would delay discovery on issues germane to the government case.

Defendants also ignore the fact that the plaintiffs in each action have brought their claims under different state and federal laws, drawing on different legal theories and requiring different elements of proof. Even where the laws appear to share common ground, the legal standards for the government and private lawsuits are fundamentally different.

First, the FTC and the NYAG have not asserted any claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (or any state RICO claims). The RICO claims brought by the Vanderwerff and Karathanos plaintiffs involve different legal elements and raise different factual issues for discovery. Among other things, those plaintiffs must allege that a RICO predicate offense is a "but for" and proximate cause of their injuries, and that there was a specific intent to defraud. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (noting requirement to show that RICO offense was a proximate cause of plaintiff's injury); *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (noting that specific intent to defraud is an element of the mail and wire fraud statutes). In contrast, the claims asserted by the FTC and the NYAG require neither a showing of causation nor of intent. *See, e.g.*, *FTC v. Five-Star Auto Club,* 97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000); *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006); *People v. Apple Health & Sports Clubs, Ltd.*, 206 A.D.2d 266, 267 (N.Y. App. Div. 1st Dep't 1994), *appeal denied*, 84 N.Y.2d 1004 (N.Y. 1994); *State v. Ford Motor Co.*, 136 A.D.2d 154, 158 (N.Y. App. Div. 3d Dep't 1988), *aff'd*, 74 N.Y.2d 495 (N.Y. 1989); *People v. Gagnon Bus Co. Inc.*, 30 Misc. 3d 1225(A) (N.Y. Sup. Ct. Queens Cnty. 2011); *People v. Am. Modification Agency. Inc.*, 2010 N.Y. Misc. LEXIS 2433 (N.Y. Sup. Ct. N.Y. Cnty. 2010).

In addition, neither the FTC nor the NYAG is required to prove individual consumer injury to state a claim for relief.[1]  *See, e.g.*, *FTC v. Freecom Communs. Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) ("Neither proof of consumer reliance nor consumer injury is necessary to establish a §5 violation."); *FTC v. Consumer Health Benefits Ass'n*, 2012 U.S. Dist. LEXIS 7261, at *18 (E.D.N.Y. 2012); *Apple Health & Sports Clubs*, 206 A.D.2d at 267; *Ford Motor Co.*, 136 A.D.2d at 158; *see also People v. Applied Card Sys., Inc.*, 27 A.D.3d 104, 107 (N.Y. App. Div. 3d Dep't 2005), *aff'd on other grounds*, 11 N.Y.3d 105 (N.Y. 2008); *People v. Gen. Elec.*, 302 A.D.2d 314, 314 (N.Y. App. Div. 1st Dep't 2003).

Further, the FTC and the NYAG have authority to obtain injunctive relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. 53(b), New York Executive Law § 63(12), and New York General Business Law § 349(b), while the court in Racies dismissed this remedy, and Petitioners are seeking dismissal in the Vanderwerff matter.

Moreover, unlike the Karathanos and Vanderwerff litigants, the FTC and the NYAG may – and do – seek disgorgement of ill-gotten monies as an equitable remedy.  *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011) ("[D]isgorgement is a distinctly public-regarding remedy, available only to government entities seeking to enforce explicit statutory provisions."); *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (Section 13(b) of the FTC Act entitles the agency to seek disgorgement to "deprive the wrongdoer of his ill-gotten gain"); *People v. Ernst & Young*, 114 A.D.3d 569, 569-70 (N.Y. App. Div. 1st Dep't 2014) (noting that "where . . . there is a claim based on fraudulent activity, disgorgement may be

---

[1] By contrast, private litigants asserting claims under New York, New Jersey, and California consumer protection statutes must show injury. *See, e.g.*, New York General Business Law § 349(h) (allowing only an "injured" person to bring an action for § 349 violations); Cal. Civ. Code § 1780(a) (allowing suit by a "consumer who suffers damage"); N.J.S.A. 56:8-19 (allowing suit by a "person who suffers any ascertainable loss of moneys or property, real or personal").

7

available as an equitable remedy, notwithstanding the absence of loss to individuals or independent claims for restitution") (citing *Applied Card Sys.*, 11 N.Y.3d, at 125-26); *People v. Greenberg*, 2014 N.Y. Misc. LEXIS 2377, at *2-*3 (N.Y. Sup. Ct. N.Y. Cnty. May 28, 2014), *aff'd*, 2015 N.Y. App. Div. LEXIS 3206 (N.Y. App. Div. 1st Dep't 2015).

Finally, unlike the private litigants, the NYAG seeks civil penalties, which the NYAG is uniquely entitled to seek under New York General Business Law §§ 349 and 350. New York General Business Law § 350-d (providing for civil penalties in amount up to $5,000 for each violation).

The legal theories underlying the FTC/NYAG and Racies deceptive advertising allegations also differ, raising different factual issues for discovery.[2] The FTC/NYAG allegations will focus primarily on the lack of substantiation for the memory claims. Plaintiffs will seek to show that: (1) Defendants made deceptive representations by failing to have adequate scientific support that Prevagen could improve memory; and (2) given the lack of substantiation, Defendants falsely claimed that Prevagen's efficacy is clinically proven. Thus, the key question is whether Defendants possess competent and reliable scientific evidence – in other words, whether well-designed and implemented neuro-cognitive testing demonstrates that taking Prevagen results in a statistically significant improvement in memory over placebo. In contrast, Plaintiffs in the Racies action must prove falsity – an analysis that is very different from proving lack of substantiation and focuses largely on the underlying chemical/pharmacological mechanism of action.

---

[2] Although the FTC and the NYAG assert different consumer protection statutes, New York General Business Law § 349 is modeled on Section 5 of the FTC Act, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995), and thus court determinations as to whether particular acts or practices fall within the FTC Act's prohibition against "unfair or deceptive acts or practices" are relevant to New York deceptive practice claims.

The filing of actions under multiple and disparate laws has been repeatedly cited by the Panel as a reason to deny centralization.  *See, e.g.*, *In re Ariz. Bev. Co. Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 1369 (J.P.M.L. 2009) (Panel denied centralization of three class actions involving deceptive marketing, in part because "common legal issues do not predominate, as plaintiffs' claims are brought under the laws of their respective states."); *In re Emergency Helicopter Air Ambulance Rate Litig.*, 2017 U.S. Dist. LEXIS 15932 (J.P.M.L. 2017) (centralization denied in part because the four complaints asserted claims under different state laws).   In ruling against centralization of six actions pending in six districts, the Panel explained their reasoning as follows: "Centralization may not prevent either conflicting or multiple rulings, because plaintiffs bring their claims under the laws of different states.  Under some state laws, the state of mind or reliance by individual purchasers may be a critical factor, in others it may not."  *In re: Skinnygirl Margarita Bev. Mktg. & Sales Practices Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011).  As in the *Skinnygirl* matter, all of the actions in this matter involve disparate statutes with variations in the basic elements of proof.

    **C.  Given the Substantial Differences in Procedural Stages of the Proceedings, Centralization is Unlikely to Reduce Discovery Burdens or Otherwise Promote Convenience or Judicial Economy**

The Panel generally disfavors centralization of actions that are not all in the initial phases of discovery and motion practice, especially where one or more actions is well ahead of the others.  There are significant differences in the development and procedural phases of the four actions here that detract from the MDL goal of minimizing discovery burdens and promoting convenience and judicial economy.

The Racies case was filed two years prior to the other actions and is far more advanced.  Substantial factual and expert discovery has occurred; motions for partial summary judgment

9

have been filed by both parties and ruled on by the court; *Daubert* motions were also filed; and a schedule has been set for briefing of class certification.

In the FTC/NYAG action, Defendants have already filed motions to dismiss, and the briefing will be completed before the Panel's hearing on the MDL motion.  In addition, both the FTC and the NYAG have already conducted investigations prior to filing the complaint.  Although further discovery will be necessary, especially with respect to expert discovery and fact depositions, the materials and information already produced during the investigation will reduce the types and quantity of discovery that Defendants are required to produce in the government action.  Such pre-complaint investigation is relevant to the Panel's assessment of whether cases are at different stages.  *See, e.g.*, *In re McNeil Consumer Healthcare, et al., Mktg. and Sales Practices Litig.* (May 20, 2011 Order Vacating Conditional Transfer Order) (MDL No. 2190) (Panel ruled against adding state attorney general's action to an existing MDL of nine private actions, in part because the state had already conducted substantial discovery during its pre-filing investigation).

In contrast, the Vanderwerff and Karathanos actions are still in their infancy.  No discovery has occurred and no schedule has been set.  Time-consuming class certification discovery, briefing, and a determination of whether to certify a class has yet to occur.  *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").  Any efficiencies of combining cases at such dissimilar stages of development would be minimal.

The Panel has repeatedly ruled against centralization under such circumstances.  For example, the Panel found that significant discovery progress in one of the actions outweighed the

fact that all three actions challenged the same deceptive advertising for Colgate toothpaste and "undoubtedly involved common factual issues." *In re Colgate Optic White Toothpaste Mktg. & Sales Practices Litig.*, 2016 U.S. Dist. LEXIS 138874, at *2 (J.P.M.L. Oct. 4, 2016). Even a matter involving 25 "highly similar" actions about negative side effects of the drug Cymbalta did not warrant centralization given the different procedural posture of the cases. *In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1394 (J.P.M.L. 2014) ("Cymbalta I"). The *Cymbalta I* ruling focused on the fact that the three earliest cases had been filed a year before the others and the discovery that had occurred in those cases had been substantial, including a 30(b)(6) deposition and large document production. In contrast, the other cases were all "still in their infancy." *Id.* The panel revisited and again denied centralization the next year even though the number of actions had grown from 25 to 41. *In re Cymbalta II,* 138 F. Supp. 3d 1375 (J.P.M.L. 2015); *see also In re Sirius XM Radio, Inc. Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1376 (J.P.M.L. 2015) (denying centralization of five actions in four courts where one action was "significantly advanced, with fact and expert discovery completed and class certification briefing poised to commence" while all other actions were in their initial stages).

    **D.  Given the Small Number of Cases, Centralization is Neither Necessary nor Warranted**

Petitioners have completely failed to meet their burden to justify why the "last solution" – a formal Section 1407 transfer – is the only viable solution in this matter, particularly where so few actions are involved. *Best Buy Co., Inc.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (Centralization should be granted only after "considered review of all other options."); *see also Transocean*, 753 F. Supp. 2d at 1374 (denying centralization of two actions); *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 244 (J.P.M.L. 1976) *(*same); *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (same).

Many of the cases Petitioners cite to justify centralization involve matters with a relatively small number of actions, but are distinct from this case in that all parties agreed to centralization.  *See, e.g.*, *In re Wesson Oil Mktg. & Sales Practices Litig.*, 818 F. Supp. 2d 1383 (J.P.M.L. 2011) (transfer granted for six actions in two districts with all parties supporting centralization); *In re Simply Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1344 (J.P.M.L. 2012) (transfer granted for two actions and potentially five tag-along actions in six courts with all parties supporting centralization); *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1342 (J.P.M.L. 2006) (transfer granted where all parties to six actions agreed not only on centralization, but also on the choice of court).  The parties in this matter, however, are not in agreement.  The Vanderwerff and Karathanos Plaintiffs have already filed their opposition, and we understand that the Racies Plaintiffs also will oppose transfer.  The fact that plaintiffs in all four actions oppose centralization is a valid consideration for the Panel.  *See, e.g.*, *Skinnygirl*, 829 F. Supp. at 1381 ("[T]hat all defendants uniformly oppose centralization is a factor which is quite influential where other factors do not favor centralization.").

### E.  Informal Cooperation is Not Necessary, but is a Preferable Alternative to Formal Centralization

Underlying every analysis of the criteria for and against Section 1407 centralization is the question of whether informal coordination is a feasible and preferable option, especially where there are only a few actions in a few courts and where, as here, three of the four cases are pending in courts in geographic proximity.  *In re Comcast Corp. Empl. Wage & Hour Empl. Practices Litig.*, 190 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016) (denying transfer of 19 actions involving a compensation dispute by cable technicians where the cases were all pending before

three judges in three adjacent districts of California, noting that voluntary cooperation and coordination or transfer pursuant to 28 U.S.C. § 1404 were preferable alternatives).[3]

Here, the significant legal, factual and procedural differences between the private class actions and governmental enforcement action brought by the FTC and the NYAG, as well as consideration of the public interest to be served by the governmental enforcement action, militate against the need for either centralization or informal cooperation.  Moreover, Petitioners' counsel never reached out to either the FTC or the NYAG to discuss any concerns they may have about overlapping discovery or to request voluntary coordination.  Nevertheless, the FTC and NYAG remain willing to discuss the extent to which opportunities may exist for informal cooperation among the parties.

## CONCLUSION

For the reasons stated above, the Federal Trade Commission and the People of the State of New York by the Attorney General of New York respectfully request that the Panel deny Petitioners' Motion for Transfer to the extent that it seeks consolidation of the FTC/NYAG action with the private actions.  Should this Panel nevertheless conclude that centralization is

---

[3] The partial overlap of counsel should also make informal cooperation easier.  The Karathanos and Vanderwerff Plaintiffs are represented by the same counsel, and there is also overlap in Defendants' counsel between at least one of these two actions and the FTC/NYAG joint action. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium), Mktg. Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013) (denying transfer due to limited number of actions involved and the overlap among some counsel).

necessary, the FTC and the NYAG do not object to Petitioners' request that the matters be centralized in the Southern District of New York.

                                        Respectfully submitted,

                                        FEDERAL TRADE COMMISSION
                                        DAVID C. SHONKA
                                        Acting General Counsel
                                        Federal Trade Commission

Dated: April 21, 2017        By: /s/ Michelle K. Rusk
                                        MICHELLE K. RUSK
                                        ANNETTE SOBERATS
                                        Federal Trade Commission
                                        600 Pennsylvania Avenue, NW
                                        Mail Drop CC-10528
                                        Washington, DC 20580
                                        Email: mrusk@ftc.gov, asoberats@ftc.gov
                                        Tel: (202) 326-3148, -2921; Fax: (202) 326-3259

                                        PEOPLE OF THE STATE OF NEW YORK
                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York

Dated: April 21, 2017        By: /s/ Kate Matuschak
                                        JANE M. AZIA
                                        Bureau Chief
                                        KATE MATUSCHAK
                                        Assistant Attorney General
                                        STEPHEN MINDELL
                                        Special Assistant Attorney General
                                        Consumer Frauds and Protection Bureau
                                        120 Broadway
                                        New York, NY 10271
                                        Tel: (212) 416-6189; Fax: (212) 416-6003
                                        Email: kate.matuschak@ag.ny.gov